UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DAPHNE BENTLEY,

          Plaintiff,

     - against -

PEACE AND QUIET REALTY 2 LLC, A.G.
PARKER INC., JOHN PARKER, and ROBERT
THOMAS,

          Defendants.
-----------------------------------------------------------X

**MEMORANDUM & ORDER**

05-CV-0917 (NGG)(SMG)

GARAUFIS, District Judge.

      The plaintiff Daphne Bentley brings this action alleging that her landlord failed to

accommodate her disability by refusing to allow her to move to a vacant lower-level unit in her

rent stabilized apartment building at her current rent in violation of Title VIII of the Civil Rights

Act of 1968, also known as the Fair Housing Act ("FHA"), as amended by the Fair Housing

Amendments Act of 1988, 42 U.S.C. § 3601 et seq. ("FHAA").  Bentley asserts that were she to

move to the lower-level unit, her current unit would be subject to a significant vacancy increase

under New York rent stabilization law to offset any financial burden to the defendants from the

proposed accommodation.  Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, the

defendants move to dismiss Bentley's claims for lack of subject matter jurisdiction, arguing that

the accommodation requested by Bentley is not contemplated under the FHAA.  For the reasons

set forth below, the defendants' motion to dismiss for lack of subject matter jurisdiction is

DENIED and this court will hold a hearing to take evidence on the "reasonableness" of the

1

plaintiff's requested accommodation.

## I.  BACKGROUND

Bentley is a 66 year-old woman who has lived at 512 Eastern Parkway, Apartment D3 in Brooklyn, New York for approximately 24 years.  (Declaration of Daphne Bentley in Support of Order to Show Cause ("Bentley Decl.") ¶ 1.)  512 Eastern Parkway is a four-story walk-up containing 16 apartment units.  (See Amend. Comp. ¶ 42.)  Bentley is a cancer patient who underwent several surgeries in 2004, including surgery to remove lymph nodes under her left arm, her uterus, and one third of her colon.  (Bentley Decl. ¶ 3.)  Bentley asserts that as a result of her surgeries, climbing up the stairs to get to and from her apartment, which is located on the top floor, is "very painful and stressful." (Id.  ¶¶ 5, 6.)  Due to her difficulty in climbing the stairs, Bentley only leaves her apartment when necessary and is dependant of the assistance of neighbors.  (Id. ¶ 6.)  Bentley lives off of a small fixed-income that consists of approximately $675 per month in Social Security and pension benefits, $149 per month in food stamps, and $200 per month given to her by her daughter.  (Statement in Support of Order to Proceed In Forma Pauperis, Feb, 17. 2005, ¶ 4.)

512 Eastern Parkway is a rent stabilized building regulated by the New York City Rent Stabilization Law, City Admin Code §§ 26-501 et seq., reprinted in N.Y. Unconsol. Laws after § 8617 at 157 (McKinney 2002), and the Rent Stabilization Code, N.Y. Comp. Code R. & Regs. ("NYCRR"), tit. 9, § 2500 et seq., reprinted in N.Y. Unconsol. Laws after § 8634, at 378 (McKinney 2002).  Bentley recently signed a two-year rent stabilized renewal lease for her apartment at $820.64 per month. (Def. Mtn. Dismiss, Mar. 24, 2005 at 2.)  In early summer of 2004, apartment B2 on the second floor of her building became vacant and Bentley asked her

landlord's agents if she could move into that apartment to avoid having to climb additional flights of stairs. (Bentley Decl. ¶ 7.) According to Bentley, her landlord did not respond to her request, or the requests of her attorney at the Legal Aid Society. (Id. ¶¶ 7, 8.) In or about September or October of 2004, apartment A2 on the first floor of 512 Eastern Parkway became vacant. (Id. ¶ 9.) Apartment A2, which is also rent stabilized, was last rented at $833.58 per month. (Amend. Compl. ¶ 48.) Bentley asserts that on October 26, 2004, her attorneys transmitted a letter of understanding to the defendants setting forth an agreement that Bentley would be moved into A2, to which she received no response. (Pl. Mem. in Support of Order to Show Cause at 4.) The defendants assert that they offered to lease Bentley apartment A2 at $1,000.30 per month, which constitutes that unit's former rent, $833.58, plus the 20% increase permitted under New York's rent stabilization laws. (Def. Mem. of Law to Dismiss for Lack of Jurisdiction, at 2.)

Bentley filed her initial complaint on February 17, 2005, in which she alleged causes of action under the FHA and New York State and New York City Human Rights Law. (Compl. ¶¶ 47-53.) On March 4, 2005, I granted the plaintiff's request for a Temporary Restraining Order ("TRO") and Order to Show Cause directing the defendants to show cause why this court should not enter an order enjoining the defendants from leasing apartments A2 and B2 pending the resolution of Bentley's claims. On March 25, 2005, the defendants filed a motion to dismiss in which they argued that they did not discriminate against Bentley because they offered to rent her apartment B2 at its legal, stabilized rent. On April 6, 2005, Bentley filed an amended complaint in which she additionally alleged that the defendants' refusal to rent her a vacant apartment exploited her disability in violation of 42 U.S.C. § 3604(f)(1)(A).

On April 7, 2005, I held a hearing on the Order to Show Cause. At the hearing, the defendants argued that they complied with the FHA by offering the defendant apartment A2 at the rent permissible under state law. Bentley asserted that the FHA's reasonable accommodation provision required her landlord to offer the unit to Bentley at her current rent. According to Bentley, there would be little, if any, financial burden to the landlord because once Bentley moved into A2, the landlord could raise the rent on apartment D3, Bentley's former unit. At the April 7 hearing, I instructed the parties to further brief the issue of whether Bentley's requested accommodation was within the scope of the FHAA. On April 27, 2005, the parties argued whether the proposed accommodation was an accommodation within the concept of the FHAA. By that time, both parties' arguments focused on apartment A2. With the agreement of both parties, I lifted the TRO prohibiting the defendants from leasing apartment B2 and kept the TRO in place respecting apartment A2.

## II.     THE FAIR HOUSING ACT

The FHA originally prohibited discrimination on the basis of race, color, religion, or national origin. The Fair Housing Amendments Act of 1988 extended the Fair Housing Act's principle of equal opportunity in housing to individuals with handicaps, making it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services of facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A). Among the discriminatory practices prohibited by the FHAA is "a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [the handicapped individual] an equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); City of

Edmonds v. Oxford House, Inc., 514 U.S. 725 (1995).

Whether a requested accommodation is required under the FHAA is "highly fact-specific, requiring case-by-case determination." United States v. California Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1418 (9th Cir. 1994) ("Mobile Home"); Lyons v. Legal Aid Soc'y, 68 F.3d 1512, 1516 (2d Cir. 1995). "Ordinarily, the duty to make reasonable accommodations is framed by the nature of the particular handicap." Salute v. Stratford Greens Garden Apartments, 136 F.3d 293, 301 (2d Cir. 1998) (citations omitted). A defendant must incur reasonable costs and take modest, affirmative steps to accommodate the handicapped as long as the accommodations sought do not pose an undue hardship or a substantial burden. Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 578 (2d Cir. 2003) (citations omitted).

To make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that: (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap "may be necessary" to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation. Mobile Home, 107 F.3d at 1380.

III.    DISCUSSION

The defendants do not dispute that Bentley is disabled for the purposes of the FHAA and that they knew of her disability, nor do they deny that they refused to make the accommodation Bentley requested. Rather, the defendants contend that Bentley's request to move into apartment A2 at her current rent, rather than that unit's maximum legal rent, does not come within the FHAA's concept of accommodation because: (1) Bentley seeks to accommodate her poverty

5

rather than her disability; and (2) offering the apartment at its maximum permissible legal rent under the state's disability-neutral rent stabilization laws fulfills a landlord's obligations under the FHAA. This court also addresses whether the plaintiff's proposed apartment swap is an accommodation to Bentley's "dwelling" as envisioned under the FHAA.

### A.     Scope of "Dwelling" Under the FHAA

I first consider whether a request to move between units of an apartment building is a cognizable accommodation under the FHAA, which permits reasonable accommodations necessary to afford an "equal opportunity to use and enjoy a *dwelling*." 42 U.S.C. § 3604(f)(3)(B) (emphasis added).

In interpreting the terms of a statute, we look first to the language of the statute itself. See Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 143 (2d Cir. 2002) (citing Mallard v. United States Dist. Court, 490 U.S. 296, 300 (1989)). "Dwelling," as set forth in 42 U.S.C. § 3602(b) means "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." This definition unambiguously extends beyond the walls of an individual unit that a disabled tenant may inhabit to the entire apartment building itself. In addition to falling within the statutory definition of "dwelling," Bentley's request to move to another apartment unit comports with the purpose of the FHAA. The Supreme Court has ruled that the FHA must be given a "generous construction" in order to carry out "a policy that Congress considered to be of the highest priority." Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 211-12 (1972). See also Garza v. Raft, No. C 98 20476, 1999 WL 33882969 (N.D. Cal. Nov. 30, 1999)

(rejecting narrow reading of FHAA regarding modifications of common areas because reading would be inconsistent with FHAA's underlying purpose, which is to make housing broadly available to persons with disabilities). The FHAA was "a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream." Helen L. v. DiDario, 46 F.3d 325, 333 n.14 (3d Cir. 1995) (quoting H.R.Rep. No. 711, 100th Cong., 2d Sess. 18, reprinted in 1988 U.S.C.C.A.N. 2173, 2179). Bentley asserts that because her handicap limits her ability to move up and down the stairs to her apartment unit, she is only able to leave her unit when absolutely necessary. Moving to a lower-floor unit will allow her to leave 512 Eastern Parkway more or less at will and interact with the community in which she has lived for over twenty years. Because the requested accommodation would reduce the barriers to Bentley's isolation from her community, it furthers the spirit and purpose of the FHAA.

Courts outside the Second Circuit have also determined that a request to transfer to other units within an apartment building is cognizable under the FHAA. In Roseborough v. Cottenwood Apartments, No. 94 C 3708, 1994 WL 695516 (N.D. Ill. Dec. 9, 1994), the plaintiff became confined to a wheelchair four months after moving into her third floor apartment. She then brought a claim under the FHAA alleging that her landlord refused her requests to be moved to an apartment on a lower floor. In denying the defendants' motion to dismiss, the court stated:

> Although a tenant who signs a lease for a particular apartment generally has no right to move to another apartment in the same building or complex, the [] complaint presents a distinguishable situation. The plaintiff[] assert[s] that [her] confinement to a wheelchair made the third floor apartment unsuitable several months after she took possession of the third floor apartment. Given the defendant's knowledge of the plaintiff's disability, the plaintiffs' desire (and alleged need) to relocate to a lower floor, and the alleged availability of suitable

> vacant lower floor apartments, the defendant was under a duty to reasonably accommodate the plaintiffs. Whether relocating the plaintiffs under the circumstances transcended the defendant's duty to reasonably accommodate the plaintiffs is a question of fact.

Roseborough, 1994 WL 695516 at *3. In addition, in Groner v. Golden Gate Apartments, 250 F.3d 1039 (6th Cir. 2001), the court considered possible accommodations for a mentally ill tenant that included transfer to another unit within his apartment building. This particular accommodation was ultimately rejected as unreasonable and ineffective, not because it was outside the scope of potential relief offered under the FHAA. Groner, 250 F.3d at 1046. Thus, consistent with the statutory definition of "dwelling," the generous construction afforded to the FHAA, and case law wherein courts considered similar accommodation requests, this court finds that Bentley's request to move to a lower-floor unit within her apartment building potentially affords her the opportunity to use and enjoy her "dwelling" within the meaning of the FHAA.

### B.     The Requested Accommodation is Framed by the Nature of the Plaintiff's Handicap

The defendants argue that Bentley's request to rent A2 at her current rent of $820.64 per month, and not that unit's maximum legal rent of $1,000.30, is essentially an accommodation to the plaintiff's poverty and not her disability, and consequently is beyond the scope of the FHAA. The defendants derive principal support for their argument from Salute v. Stratford Greens Garden Apartments, 136 F.3d 293, 302 (2d Cir. 1998). Salute involved two disabled plaintiffs who claimed that the FHAA required a landlord to accept their Section 8 housing certificates to accommodate their disabilities where, with the exception of preexisting tenants, the landlord did

not participate in the Section 8 program.[1]   In rejecting the plaintiffs' claim, the Second Circuit reasoned that the plaintiffs sought "an entitlement to an accommodation that remedies their economic status, on the ground that this economic status results from their being handicapped. We think it is fundamental that the law addresses the accommodation of handicaps, not the alleviation of economic disadvantages that may be correlated with having handicaps." <u>Salute</u>, 136 F.3d at 301.  The court concluded that "[t]he FHAA does not elevate the right of the handicapped poor over the rights of the non-handicapped poor.  Economic discrimination – such as the refusal to accept Section 8 housing tenants – is not cognizable as a failure to make reasonable accommodations, in violation of § 3604(f)(3)(B)." <u>Id.</u> at 302.

The Second Circuit's limit on economic accommodations in <u>Salute</u> has little application to the instant action.  In <u>Salute</u>, the plaintiffs sought an accommodation that remedied their economic status, not their disability.  Because the requested accommodation was not "framed by the nature of their handicap" the court determined it was not cognizable under the FHAA.  <u>Id.</u> at 301 (citations omitted).   Unlike the plaintiffs in <u>Salute</u>, Bentley seeks an accommodation that directly relates to her handicap, specifically her inability to walk up and down the stairs to her apartment unit.

The defendants further contend that Bentley is required to assume the costs associated with her proposed accommodation.  According to the defendants, they have complied with the

---

[1]   The Section 8 Program is designed "[f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing."  42 U.S.C. § 1437f(a).  Participants in the Section 8 program receive vouchers from the local Housing Authority, which they may use to rent a unit on the private housing market.  The program provides that the tenant will pay approximately thirty-percent of her income toward the monthly rent, with the Housing Authority paying the remainder of the monthly rent directly to the landlord.  <u>See</u> <u>Salute</u>, 136 F.3d at 296; <u>see</u> <u>gen.</u> 42 U.S.C. § 1437f.

FHAA by offering Bentley apartment A2 at its maximum legal rent.   However, contrary to the

defendants' reasoning, it is the housing provider, and not the disabled individual who is

potentially required to assume the costs of a proposed accommodation.  Under the FHAA, a

landlord may be "required to incur reasonable costs to accommodate [a tenant's handicap]

provided such accommodations do not pose an undue hardship or a substantial burden."  See

Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 335 (2d Cir. 1995) (cooperative complex could be

required to incur reasonable costs associated with providing disabled resident parking); Hubbard

v. Samson Mgmt. Corp., 994 F.Supp. 187 (S.D.N.Y. 1998) (where apartment complex had a mix

of free and fee-paid parking spaces, landlord's proposal to require disabled tenant to pay for

parking close to her apartment unit was not a reasonable accommodation).  Samuleson v. Mid-

Atlantic Realty Co., 947 F.Supp. 756 (D.Del. 1996) (mentally ill tenant stated claim under

FHAA that landlord unreasonably assessed rent and later charges after he was forced to terminate

lease due to mental condition).  Indeed, "the history of the FHAA clearly establishes that

Congress anticipated that landlords would have to shoulder certain costs involved, so long as

they are not unduly burdensome."  Mobile Home, 29 F.3d at 1416.  Here, Bentley seeks an

accommodation for her disability without being forced to assume additional rental expenses.

This is exactly the type of accommodation that falls with the purview of the FHAA.  Whether the

accommodation is "reasonable" is a separate question.

### C.  A Disability-Neutral Policy Does Not Automatically Preclude an Inquiry Into the "Reasonableness" of the Proposed Accommodation

The defendants argue that because rent stabilization laws affect handicapped and non-

handicapped residents equally, Bentley is not entitled to a waiver of the vacancy increase to

which the defendants are entitled under New York's rent stabilization laws. By offering Bentley apartment A2 at its maximum legal rate, the defendants assert that they have fulfilled the FHAA's mandate to provide an "equal opportunity" to Bentley by putting her on the same footing as a non-disabled individual. Accordingly, the defendants assert that allowing Bentley to rent apartment A2 at less than its legal rate is beyond the scope of the FHAA because it would provide Bentley with a preference, rather than an equal opportunity, to use and enjoy that apartment.

The defendants' reasoning was largely rejected in US Airways v. Barnett, 535 U.S. 391 (2002).[2] In Barnett, an airline cargo handler requested, as accommodation for his back injuries, an exception to the company's seniority system so that he could transfer to a less physically demanding position. Barnett, 535 U.S. at 393-94. The airline refused the plaintiff's request, arguing that because the ADA ensures *equal* treatment of persons with disabilities, any sort of preferential exception to a disability-neutral policy was outside the scope of the "reasonable accommodations" requirement. Id. at 397. Rejecting the airline's argument, the Court held that "[t]he simple fact that an accommodation would provide a 'preference' – in the sense that it would permit the worker with a disability to violate a rule that others must obey – cannot, *in and of itself*, automatically show that the accommodation is not 'reasonable'." Id. at 398. Although a seniority system would trump the right to be accommodated in most cases, the Court ruled that

---

[2] Although Barnett involved a claim under the Americans with Disabilities Act ("ADA"), in determining the reach of the FHAA's accommodation requirement, courts frequently look to the Rehabilitation Act and the ADA. See Giebler v. M & B Assocs., 343 F.3d 1143, 1149 (9th Cir. 2003) (collecting cases); Shapiro, 51 F.3d at 334 ("in enacting the anti-discrimination provisions of the FHAA, Congress relied on the standard of reasonable accommodation developed under section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 704.").

the plaintiff had the right to demonstrate that the requested accommodation was reasonable on the particular facts because special circumstances might alter the important expectations inherent in a seniority system. Id. at 405. The plaintiff could show, for example, that the employer frequently exercised a unilateral right to change the seniority system such that employee expectations were reduced to the point where an accommodation to a disabled individual would not make a difference. Id.

As in Barnett, the mere fact that Bentley seeks a preference not afforded to non-handicapped individuals does not preclude this court from proceeding to an inquiry into the reasonableness of Bentley's request. The defendants are not mandated under state rent stabilization law to charge Bentley the maximum legal rent for apartment A2. See 448 West 54th Street Corp. v. Doig-Marx, 5 Misc.3d 405, 2004 WL 2059422 (N.Y. City Civ. Ct. 2004) (allowing preferential rent at rate lower than that specified under rent control law for duration of tenancy). Clearly, in the ordinary run of cases, the landlord of a rent-stabilized building is not required to forgo the opportunity for a vacancy increase merely because a disabled individual seeks to inhabit that apartment unit. Here, however, Bentley asserts that the defendants would actually *profit* from the proposed move because, were she to leave her current unit, also owned by the defendants, the defendants would be entitled to a significantly higher vacancy increase for that unit than for apartment A2. The defendants briefly counter that any purported profit is illusory because, unlike apartment A2, Bentley's current unit requires extensive renovations and because fourth floor walk-ups are more difficult to rent than first floor units. Although the defendants raise legitimate concerns that Bentley's accommodation is unduly burdensome, the court is currently presented with the limited issue of whether the plaintiff's request is an

"accommodation" within the meaning of the FHAA. Having now determined that Bentley's request falls within the FHAA's concept of "accommodation," this court may proceed to an inquiry into the accommodation's reasonableness.

## IV.    CONCLUSION

The defendants' motion to dismiss for lack of jurisdiction is denied because the FHAA contemplates the accommodation proposed by the plaintiff. It is important to note, however, what this court has not held. I have not decided the issue of whether the defendants failed to reasonably accommodate Bentley by refusing her request. Whether a requested accommodation is required under the FHAA is highly fact-specific, requiring a case-by-case determination. Hubbard, 994 F.Supp. at 190 (citations omitted).

In order to determine whether Bentley's requested accommodation poses an undue burden to the defendants, the court will hold a hearing on Tuesday, May 10, 2005 at 11:30 a.m., wherein the parties will submit qualified witness testimony concerning what burden to the defendants, if any, would result from the proposed accommodation. Evidence presented at the hearing shall cover the following issues: 1) the vacancy increase to which the defendants are entitled to apartment D3, in the event it was vacated by Bentley; 2) the "rentability" of apartment A2 over D3; 3) the maximum legal rent for apartment A2 under Rent Stabilization Code § 2521.2 following vacancy by Bentley in the event she received a preferential rent for this unit for the duration of her tenancy; 4) the administrative burden, if any, to the defendants in providing Bentley with a preferential rent; 5) any other issues relevant to the reasonableness of Bentley's request. The parties are free to stipulate to facts prior to the hearing concerning the questions presented above.

13

The defendants continue to be enjoined from leasing apartment A2 pending the resolution of the plaintiff's claims. As already noted, the TRO against apartment B2 has been lifted.


SO ORDERED.

Dated: May 3, 2005                                    /s/ Nicholas G. Garaufis
      Brooklyn, New York                    NICHOLAS G. GARAUFIS
                                United States District Judge